IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JOHN F. D.,[1]  )<br>  )<br>   **Plaintiff,**   )<br>  )<br>v.   )<br>  )<br>ANDREW M. SAUL,   )<br>**Commissioner of Social Security,**   )<br>  )<br>   **Defendant.**   )<br>_____) | **CIVIL ACTION**<br><br>No. 19-2299-JWL |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614 of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.    Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff filed an application for DIB on April 5, 2016 and for SSI on April 7, 2016 alleging disability beginning May 5, 2010. (R. 9, 192-203). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erred in assessing his residual functional capacity (RFC). Specifically, he claims the ALJ erred by ignoring the report of Dr. Fishman's[2] examination because it was from a previously adjudicated period; by picking and choosing among the medical evidence regarding his right foot, his left knee, and his urinary frequency and urgency; and relied excessively on his lack of medical treatment and on his daily activities to discount his allegations of symptoms.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less

---

[2] Plaintiff argues, "the ALJ chose to ignore Dr. Fisher's report" (Pl. Br. 30) (emphasis added), but the record does not contain a report by a Dr. Fisher, Plaintiff previously quoted the ALJ's evaluation of Dr. Fishman's report, and Plaintiff's allegation of error quotes the ALJ's statement regarding Dr. Fishman's report. The court finds this is a typographical error and Plaintiff is referring to Dr. Fishman's report.

2

than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled,

evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

## II.     Dr. Fishman's Report

Plaintiff argues the ALJ erroneously ignored Dr. Fishman's reported opinions because his examination "occurred during a previously adjudicated period" and were

"considered in the denial of the claimant's prior application." (Pl. Br. 30).[3] The Commissioner argues that although the ALJ was not required to discuss Dr. Fishman's opinions because they were from an earlier disability decision, she did not ignore his opinions but specifically considered and discounted them. (Comm'r Br. 10) (quoting Arterberry v. Berryhill, 743 F. App'x 227, 230 (10th Cir. 2018) ("[Plaintiff] cites no authority, and we have found none, requiring an ALJ and agency reviewers to discuss the opinions of a consultative examiner from a prior disability proceeding—one that may have involved different medical issues and evidence, and that resulted in a denial of benefits."). He argues the ALJ discounted Dr. Fishman's opinions both because they were from a previously adjudicated period and because they were inconsistent with the other record evidence.

### A. The ALJ's Decision

The ALJ summarized Dr. Fishman's opinion

> that the claimant could lift/carry 20 pounds occasionally and stand and/or walk 2 hours out of 8 hours. Dr. Fishman further opined that the claimant would only be able to tolerate occasional sitting, standing, walking, kneeling, stooping, and squatting, and would need an assistive device to ambulate for support, especially on uneven surfaces.

---

[3] The court notes that it granted Plaintiff's first unopposed motion to extend the time to file his Social Security Brief, resulting in the Brief being due November 8, 2019. (Doc. 10). On November 8, 2019, Plaintiff filed another motion to extend the time till November 12, 2019 (Doc. 11) which the court also granted. (Doc. 13). Plaintiff filed his Social Security Brief on November 11, 2019 (Doc. 12) and filed an amended Brief on November 12, 2019. (Doc. 14). Both Briefs are titled "Plaintiff's Initial Social Security Brief," and appear to be identical. The amended Brief (Doc. 14) is the one upon which the court relied in its review and every citation to "Pl. Br." in this Memorandum and Order is to that amended Brief.

5

(R. 19) (citing Ex. C8F/2-4, R. 896-98).  She explained she accorded little weight to Dr. Fishman's opinions because they "have already been considered in the denial of the claimant's prior application.  Furthermore, these opinions are inconsistent with the objective evidence of record discussed herein."  (R. 20).

### B.    Analysis

The Commissioner is correct, the ALJ did not ignore Dr. Fishman's opinion.  As the Commissioner points out, the ALJ could have declined to consider Dr. Fishman's 2014 opinion as relating to a previously adjudicated period.  Arterberry, 743 F. App'x at 230.  But instead she discounted it and accorded it only little weight because it related to the prior denied application and because it was inconsistent with the medical evidence in the record.  Plaintiff did not attempt to counter the second reason.

### III.   Picking and Choosing Among the Medical Evidence

Plaintiff alleges the ALJ picked and chose among the medical evidence regarding his right foot, his left knee, and his urinary frequency and urgency.  Specifically, he argues the ALJ compared the condition of Plaintiff's right foot as revealed by x-rays in 2016 with its condition revealed by "the more accurate EMG examination in 2017 and fail[ed] to attribute any significance to the difference between the two examinations." (Pl. Br. 31).  He continues by arguing that the ALJ inaccurately asserted, "There is no evidence in the record that the claimant required any surgeries to remedy these conditions."  Id. at 32 (quoting R. 16).  Regarding his left knee, Plaintiff argues the ALJ mischaracterized Dr. Markey's referral "to Dr. Kotwal to discuss total knee arthroplasty" as merely a referral "for further treatment."  Id. (quoting respectively R. 1221, 16).  He

also complains "the ALJ failed to note the doctor's finding that Plaintiff 'had Pain with Right Straight leg raise to 50 degrees in right buttock, 4+/5 hip flexion' and the doctor's assessment that Plaintiff had 'R SI joint pain and Left knee --severe tricopartmental [sic] arthritis.'" (Pl. Br. at 32-33) (quoting R. 1221). Finally, Plaintiff argues that the ALJ erred in relying on Plaintiff's failure to follow-up on his urinary problems after he received a Botox injection because "she was obliged to investigate and determine why his medical records did not indicate he had received any follow-up care." Id. at 33.

The Commissioner argues the ALJ accurately summarized the medical evidence and did not ignore or overlook any material evidence. Regarding Plaintiff's right foot impairment, the Commissioner points out that Plaintiff's argument replaces an entire paragraph of the ALJ's summary with ellipses and suggests that this artificial proximity demonstrates the ALJ was comparing older x-rays with a newer EMG to discount the EMG, whereas in reality the ALJ was providing a longitudinal summary of all Plaintiff's medical treatment. (Comm'r Br. 13). He argues Plaintiff's suggestions of error in the ALJ's consideration of his left knee impairment is a matter of semantics, and "more to the point, … Plaintiff has altogether failed to explain how the record evidence of his left knee condition compels finding he had greater RFC limitations than those the ALJ assessed." Id. at 15 (citing Scull v. Apfel, No. 99-7106, 2000 WL 1028250, at *1 (10th Cir. July 26, 2000)). Finally, the Commissioner points out that, as the ALJ noted, "the record contained no indication that Plaintiff ever returned to his urologist for follow up care" (Comm'r Br. 16), and he argues that "Plaintiff advances no explanation for his lack of follow up—nor is one apparent from the record." Id. at 17.

7

As Plaintiff suggests, an ALJ may not pick and choose through a medical report, using only those parts favorable to her decision. Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007); Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004); Hamlin v. Barnhart, 365 F.3d 1209, 1219 (10th Cir. 2004). "Nor may [s]he 'pick and choose among medical reports, using portions of evidence favorable to h[er] position while ignoring other evidence.'" Fuller v. Astrue, 766 F. Supp. 2d 1149, 1156 (D. Kan. 2011) (quoting Hardman v. Barnhart, 362 F. 3d 676, 681 (10th Cir. 2004) (emphasis in Fuller).

Plaintiff has not demonstrated that the ALJ picked and chose through the medical evidence, using only those parts favorable to her decision. Plaintiff's argument that the ALJ negatively compared the 2017 EMG with the 2016 x-rays demonstrates the error in her premise because it demonstrates that the ALJ "used" both the evidence that was favorable to her position and that which was less favorable. Moreover, as the Commissioner points out the ALJ did not compare the EMG negatively with the x-rays but provided a longitudinal summary of all the evidence. Further, the ALJ's finding that Plaintiff's right foot was "treated only conservatively" and there was "no evidence in the record that the claimant required any surgeries to remedy" right carpal tunnel syndrome or right tarsal tunnel syndrome is not error. (R. 16). As Plaintiff quotes in his Brief, Dr. Theoharidis discussed this issue in a treatment note dated January 23, 2017:

> There is also a possibility of anterior tarsal release, although we did discuss risks and benefits. The patient will try the cream first. He does want to go forward with surgery. We would be more than happy to perform that for him in the future if he needs we will see him p.r.n.

(R. 1083) (quoted in Pl. Br. 32).

8

While it is true Dr. Theoharidis discussed the possibility of tarsal release surgery, he recommended treatment with cream. As the ALJ noted, Plaintiff agreed to "try the cream first," and Dr. Theoharidis stated that he "would be more than happy to perform [the surgery] for him in the future if he needs." (R. 1083). However, the record includes medical records through November 2017 and there is no indication the cream was less than effective and there is no indication Plaintiff returned to see Dr. Theoharidis. The clear import of these facts taken together is that surgery was not required as the ALJ noted. Plaintiff has shown no error in the ALJ's consideration of his right foot impairment.

Plaintiff's arguments regarding his left knee impairment is to a similar effect. He argues it was error for the ALJ to say he was "referred for further treatment" (R. 16) when the treatment note reflects he was referred "to Dr. Kotwal to discuss total knee arthroplasty." (R. 1221). Were the record to reflect that Plaintiff received or was scheduled for a total knee arthroplasty, the court might find that something was ignored or misrepresented. However, there is no indication in the record Plaintiff had even scheduled a follow-up appointment with Dr. Kotwal by the time of the hearing. The court is aware the hearing was held in this case on November 29, 2017, just 21 days after the office visit at issue here, and the ALJ's decision issued January 29, 2018 leaving little time for arthroplasty consultation or surgery. However, the issue before the ALJ was Plaintiff's condition and abilities as reflected in the record at the time of her decision, not what Plaintiff's condition and abilities may become at some unknown later date. Plaintiff's complaint that the ALJ did not mention every finding of the doctor in the

9

treatment note at issue is without merit because she does not demonstrate findings which require a different conclusion by the ALJ. For example, it is not material that the ALJ did not state the doctor's finding of "severe tricompartmental arthritis" because he stated the finding of the x-ray upon which the doctor based her summary, that the x-ray revealed "moderate-to-severe tricompartmental osteoarthrosis of the left knee." (R. 16) (quoting R. 1219). Finally, Plaintiff has shown no evidence regarding Plaintiff's urinary frequency and urgency which the ALJ mischaracterized or ignored. Plaintiff's argument that the ALJ should have investigated why the "medical records did not indicate he had received any follow-up care" will be addressed in the next section of this opinion.

Plaintiff has not demonstrated that the ALJ erroneously picked and chose among the medical evidence to support his finding that Plaintiff is not disabled. To the extent Plaintiff's arguments regarding picking and choosing suggest that the ALJ accorded insufficient weight to certain evidence she considered and too much weight to other evidence, the court reminds Plaintiff that it may not reweigh the evidence or substitute its judgment for that of the Commissioner.

## IV.   Evaluation of Plaintiff's Allegations of Symptoms

Plaintiff argues, "Throughout the ALJ's Decision she continually refers to Plaintiff's lack of medical treatment as support for her finding that Plaintiff's impairments were not as severe as he alleged." (Pl. Br. 34). He argues that an ALJ may not rely on a failure to seek, to follow-up on, or to comply with treatment recommendations without considering why a claimant did not do so. Id. at 33-34 (citing Soc. Sec. Ruling (SSR) 96-7p, 16-3p). He also notes, "The ALJ cites Plaintiff's Daily

Activities as a reason for disbelieving the severity of Plaintiff's impairments." (Pl. Br, 35). He points out "that daily activities is just one of many factors to be considered when evaluating the credibility of testimony," and argues, "The ALJ does not indicate what additional activities that she considered to support her finding that Plaintiff's symptoms were not severe as alleged." Id.

The Commissioner argues the ALJ had no obligation to investigate why Plaintiff did not seek further treatment of his urinary problems after he received a Botox injection in January 2017 and was "doing much better than before" in February 2017. (Comm'r Br. 16-17 (quoting R. 1087). He argues that the record reveals an almost-6-year lapse in treatment between May 2010 and March 2016 about which Plaintiff offers no explanation and "the Court [sic] should not shore up Plaintiff's argument for him." Id. at 17. He argues the record evidence shows Plaintiff did not seek treatment during this period because his symptoms were not as severe as now alleged, and the ALJ reasonably relied upon this evidence. Id. at 18. The Commissioner points out that Plaintiff's daily activities argument once again uses ellipses in its quotation which omits "four complete sentences that enumerate a total of 20 specific examples of Plaintiff's daily activities," and then makes his argument that the ALJ did not indicate the additional activities she considered to discount Plaintiff's allegations of symptoms. Id. at 19 (bolding omitted). He argues that the activities relied upon by the ALJ are more than sporadic household tasks and are significantly inconsistent with Plaintiff's claim of total disability. Id.

### A.     Standard to Evaluate Allegations of Disabling Symptoms

An ALJ's evaluation of the consistency of a claimant's allegation of symptoms is generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173. Therefore, in reviewing the ALJ's evaluation of symptom allegations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule"). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

The Tenth Circuit has explained the analysis for considering subjective allegations regarding symptoms. Thompson, 987 F.2d at 1488 (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the

12

evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488(citations and quotation omitted).

In evaluating a claimant's allegations of symptoms, the court has recognized a non-exhaustive list of factors which should be considered. Luna, 834 F.2d at 165-66; see also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).[4]

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegations of symptoms which overlap and expand upon the factors stated by the court: Daily activities; location, duration, frequency, and

---

[4] Luna, Thompson, Kepler, and the other cases cited above were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination." Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5871 (Jan. 18, 2017) (codified at 20 C.F.R. § 404.1529). Therefore, the three-step framework set out in Luna, based on 20 C.F.R. § 404.1529 (2017) is still the proper standard to be used as explained in the regulations in effect on January 29, 2018, when this case was decided. Nonetheless, to the extent that "subjective measures of credibility that are peculiarly within the judgment of the ALJ" relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p, and is no longer a valid factor to be considered.

intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. § 404.1529(c)(3)(i-vii).

### B.     The ALJ's Symptom Evaluation

The ALJ explained that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (R. 15).  The ALJ explained the inconsistencies she found for discounting Plaintiff's allegations:  Plaintiff had recovered from his fall in 2008 and the surgeries to correct that condition in 2008 and 2009.  (R. 15).  She found that except for two consultative examinations in 2014 in connection with an earlier application for benefits which was denied, the record contains no evidence of medical treatment between Plaintiff's alleged onset date of May 5, 2010 and March 2016.  Id. (see also, R. 19-20) ("these consultative examinations both occurred during a previously adjudicated period.  Consequently, these opinions have already been considered in the denial of the claimant's prior application.").  She found Plaintiff's allegations inconsistent with subsequent medical evidence showing mostly mild and unremarkable results or conditions treated conservatively.  Id. at 15-16.  She noted examination findings were repeatedly normal. Id. at 16-17.  She noted that after Plaintiff got a Botox injection for his urinary urgency, he reported doing much better and although his provider advised him to return in three

14

months, "there is no indication in the record that the claimant ever returned for follow-up care, which suggests that his symptoms were perhaps not as severe as he alleged." (R. 17). She noted that when Plaintiff restarted mental health treatment after about 20 years "he was proscribed [sic] Depakote 500 mg and Trazadone 50 mg and referred to case management," and "this treatment plan was relatively effective," and "his mental status examination was entirely within normal limits." Id. at 18. Finally, the ALJ explained why she found Plaintiff's daily activities are inconsistent with his allegations of disabling symptoms:

> In addition to the clinical and objective evidence described above, the claimant's activities of daily living and other reported activities also belie the severity of his allegations. For example, the claimant is able to maintain his personal care, prepare meals, do laundry, clean, drive, use public transportation, leave the house alone, and shop in stores. In addition, he can manage finances, attend weekly church and Bible study, spend time with others, follow instructions, and use a computer. Furthermore, he does not need reminders to go places, he takes friends to doctors' appointments, works as a part-time minister, goes to the movies, cares for animals, and helps people at his church and at the City Union Mission. Finally, the claimant served as the primary caregiver to his ill father that was in need of extensive care for much of the relevant period. In the end, not only do these activities of daily living support no more than moderate limitations in the "B" criteria as discussed above at Finding 4, but also it belies the assertion that his symptoms are as severe as alleged.

(R. 18) (extensive citations omitted).

### C.  Analysis

As outlined above, the ALJ stated five inconsistencies as reasons for discounting Plaintiff's allegations of symptoms in addition to the two reasons to which Plaintiff objects—lack of medical treatment and activities of daily living. As a preliminary matter, the court notes those five reason provide a basis to find any error in the ALJ's

15

First, he has waived this argument because he failed to present it in his initial Brief. Anderson v. U. S. Dep't of Labor, 422 F.3d 1155, 1174 (10th Cir. 2005) ("A party waives an issue when he or she fails to raise it in an opening brief."). Moreover, even though Plaintiff argued in his Brief that the ALJ's decision "is not supported by the … correct legal standard" (Pl. Br. 30), he did not even suggest that the ALJ erred by failing sua sponte to amend his alleged onset date. An issue is waived when it is raised insufficiently in an opening brief; San Juan Citizens Alliance v. Stiles, 654 F.3d 1038, 1056 (10th Cir. 2011); or when it is raised in a perfunctory manner. United States v. Hardman, 297 F.3d 1116, 1131 (10th Cir. 2002).

Second, even if the court were to ignore the waiver issue, it finds no error. Plaintiff cites no authority, and the court finds none, for the proposition that an ALJ is authorized, much less required, to amend the alleged onset date of a Social Security disability claimant, particularly one who is represented before the agency.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated April 30, 2020, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**